UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRODUCE PAY, INC., <br><br> Plaintiff, <br><br> v. <br><br> FVF DISTRIBUTORS INC., et al., <br><br> Defendants. | Case No. 20-cv-517-MMA (BGS) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT** <br><br> [Doc. No. 62] |

On September 13, 2021, Plaintiff Produce Pay, Inc. ("Plaintiff") filed a motion for judgment pursuant to California Code of Civil Procedure § 664.6. The motion is unopposed to date. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.

**I. Background**

This case has an unusual history, factually and procedurally. On March 19, 2020, Plaintiff filed a Complaint against FVF Distributors Inc. ("FVF"), Veg-Fresh Farms, LLC, Mark C. Widder, Robert L. Whitney, Jr., Lawrence D. Cancellieri, Randy J. Cancellieri, Adam T. Cancellieri, and F. David Avila ("Mr. Avila") pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a *et seq.* ("PACA"). Doc. No. 1 ("Compl."). Generally speaking, the case arises from the alleged failure to pay Plaintiff for the receipt of produce. *See, e.g.*, Compl. ¶ 10. On June 6, 2020, FVF and

Mr. Avila filed answers to the Complaint. Doc. Nos. 26, 27. Thereafter, Veg-Fresh Farms, LLC, Mark C. Widder, Robert L. Whitney, Jr., Lawrence, D. Cancellieri, Jr., Randy J. Cancellieri, and Adam T. Cancellieri were dismissed from the case via stipulation. Doc. No. 32. As such, the case proceeded solely against FVF and Mr. Avila (collectively, "Defendants"). It appears that Mr. Avila was the sole controlling officer of FVF. *See, e.g.*, Doc. No. 63-1 ¶ 6.

On October 14, 2020, the parties participated in an Early Neutral Evaluation conference before United States Magistrate Judge Ruth Bermudez Montenegro[1] wherein the case settled. *See* Doc. No. 43. Thereafter, the parties executed a settlement agreement. Doc. No. 62-3 (the "Settlement Agreement" or "SA"). However, issues soon arose relating to Defendants' ability to perform under the Settlement Agreement. On November 6, 2020, the parties informed Judge Montenegro that the Settlement "fell through." Doc. No. 46. Namely, Defendants did not make the first $5,000 installment payment. *See* Doc. No. 48-1 at 3. Consequently, Plaintiff filed a motion to enforce the Settlement Agreement and for entry of judgment, Doc. No. 48, which the Court granted in part, finding that the parties knowingly and voluntarily entered into a valid and binding contract under California law, Doc. No. 56 at 2.[2] The Court, however, declined to enter judgment at that time. *Id.* The Court stated:

> The issue of the Settlement Agreement's validity and enforceability is distinct from Defendants' alleged breach and Plaintiff's entitlement to judgment. The

---

[1] Judge Montenegro was the assigned Magistrate Judge during all relevant times, and the present motion for judgment was referred to her for report and recommendation. On March 22, 2022, the United States Senate confirmed Judge Montenegro's nomination to serve as a United States District Court Judge. *See* News Release, U.S. Cts. for the Ninth Cir., Ruth Bermudez Montenegro to Serve as U.S. District Judge for Southern District of California (Mar. 22, 2022), https://cdn.ca9.uscourts.gov/datastore/ce9/2022/Montenegro_Ruth_Bermudez_CAS_Confirmed.pdf. As such, on March 31, 2022, the case was transferred to Magistrate Judge Skomal. *See* Doc. No. 83. Due to the undersigned's familiarity with the complicated history of the case, the Court withdraws the referral and instead addresses the merits of the motion without report and recommendation.

[2] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

> latter has not been sufficiently briefed. Further, even assuming Plaintiff demonstrated that Defendants breached the Settlement Agreement, Plaintiff does not explain how such a breach entitles it to immediate judgment for the full amount under either the terms of the Settlement Agreement or California law. Moreover, it appears that Defendants have until July 13, 2021 to tender full payment. *See* Doc. No. 48-2 at 16. And if Defendants do so, the terms set forth in paragraph 7 of the Settlement Agreement seem to indicate that the parties will stipulate to dismissal of the action in lieu of seeking entry of judgment. *See id.* at 17.

*Id.* at 2–3.

Thereafter, the parties, through their attorneys, discussed entering into a stipulated judgment. *See* Doc. No. 62-2 ("Kane Decl.") ¶ 6. On August 10, 2021, Plaintiff sent Defendants a draft Stipulated Judgment. Kane Decl. ¶ 7. However, on August 17, 2021, Defendants' attorney, Mr. John F. Lenderman, advised Plaintiff that Mr. Avila had contracted COVID-19 and was admitted to a local hospital. Kane Decl. ¶ 8. Consequently, Mr. Avila did not sign the Stipulated Judgment. On or about August 30, 2021, Mr. Avila passed away. Kane Decl. ¶ 14; Doc. No. 63-1 ¶ 2.

On September 13, 2021, Plaintiff filed the instant motion for judgment. Doc. No. 62. Two days later, Mr. Lederman filed a motion to withdraw as counsel of record for Defendants. Doc. No. 63. Attached to his motion, Mr. Lenderman offered a declaration, informing the Court of Mr. Avila's passing. Doc. No. 63-1. The Court issued an interim order on the motion to withdraw, directing Mr. Lenderman to properly serve his motion on his clients pursuant to Civil Local Rule 83.3.f.3.a–b and to file a supplemental declaration demonstrating good cause to withdraw. Doc. No. 64 at 2. On that same day, Judge Montenegro directed Plaintiff to provide a status report regarding its intent to substitute parties under Federal Rule of Civil Procedure 25(a).[3] Doc. No. 65.

---

[3] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

1   Ultimately the Court granted Mr. Lenderman's motion to withdraw.  Doc. No. 68.
2   Upon Mr. Lenderman's representations, the Court found that good cause existed because
3   Mr. Lenderman never received compensation for his representation and that Mr. Avila's
4   death made it unreasonably difficult to effectively carry out his legal responsibilities.
5   Doc. No. 68 at 1–2.  Mr. Lenderman filed a declaration of service of the Court's
6   withdrawal order on Mr. Avila's surviving spouse, Estella Medellin Barraza
7   ("Ms. Barraza").  Doc. No. 69.
8   On October 21, 2021, Plaintiff filed a motion to substitute Ms. Barraza into the
9   action in Mr. Avila's stead pursuant to Rule 25(a).  Doc. No. 71.  The Court initially
10  denied the motion as procedurally defective and directed Plaintiff to file a renewed
11  motion and properly serve it on Ms. Barraza.  Doc. No. 74.  On January 3, 2022, Plaintiff
12  filed a renewed motion to substitute, curing the initial motion's procedural defect.  Doc.
13  No. 75.  The Court granted Plaintiff's motion and substituted Ms. Barraza into the action
14  as a proper party for substitution under Rule 25(a).  Doc. No. 78.  Ms. Barraza was served
15  with a copy of the substitution order.  Doc. No. 80.
16  On March 3, 2022, Judge Montenegro issued an order directing Plaintiff to serve
17  its motion for judgment on Ms. Barraza pursuant to Rule 5.  Doc. No. 81.  Judge
18  Montenegro's order gave Ms. Barraza thirty (30) days leave to file a response in
19  opposition.  *Id.*  To date, no oppositions have been received.

## II. DISCUSSION

21  A district court has the inherent power to summarily enforce, by way of motion, a
22  settlement agreement entered into while the litigation is pending before it.  *In re City of*
23  *Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *Callie v. Near*, 829 F.2d 888,
24  890 (9th Cir. 1987).  A settlement agreement must be "a complete agreement," meaning
25  that "the parties have reached agreement on all material terms," *Callie*, 829 F.2d at 891,
26  and the parties "must have either agreed to the terms of the settlement or authorized their
27  respective counsel to settle the dispute."  *Marks-Foreman v. Reporter Pub. Co.*, 12 F.
28  Supp. 2d 1089, 1092 (S.D. Cal. 1998) (citations omitted).

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (*quoting Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th. Cir. 1989)). State law applies even when the underlying litigation is based on federal law. *Id.*; *see also Harrop v. West. Airlines, Inc.*, 550 F.2d 1143, 1145 (9th Cir. 1977) (applying California law). Courts construe settlement agreements in favor of enforcement. *Jeff D.*, 899 F.2d at 759 ("The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation.").

The Settlement Agreement was entered into in California, Doc. No. 62-1 at 10, and calls for the application of California law, SA ¶ 16. Plaintiff moves for the entry of judgment pursuant to California Code of Civil Procedure § 664.6,[4] which governs the enforcement of settlement agreements and entry of judgment pursuant thereto. It provides:

> If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

Cal. Civ. Proc. Code § 664.6(a).[5]

---

[4] Unless otherwise noted, all statutory references are to the California Code of Civil Procedure.

[5] Effective January 1, 2021, section 664.6 now includes additional subsections, including (b) which states that "a writing is signed by a party" if it is signed by the party, their attorney, or the party's agent if they are an insurer. Cal. Civ. Proc. Code § 664.6(b)(1)–(2). This amendment was neither in effect at the time the parties executed the Settlement Agreement nor is it relevant.

Here, the Settlement Agreement was executed while this litigation was pending. The parties did not dismiss the action upon the Settlement Agreement's execution and instead elected to postpone joint dismissal until after complete performance under the Settlement Agreement. SA ¶ 7. Moreover, the Settlement Agreement expressly provides that the Court shall retain jurisdiction over both the case and the Settlement Agreement until complete performance. SA ¶¶ 3, 15.

The Settlement Agreement is signed by Benjamin M. Kahrl on behalf of Plaintiff as Vice President, as well as Mr. Avila individually and on behalf of FVF as President. SA at 5. Plaintiff seeks the entry of judgment in the total amount of $47,947.50. Due to the changes of the parties to this action since Plaintiff filed its motion, the Court addresses section 664.6 as it pertains to each relevant person.

**A.    Judgment Against FVF**

The Court previously found that FVF entered into a valid and binding contract under California law. Doc. No. 56. The evidence reveals that the Settlement Agreement contains all material terms and that both Plaintiff and FVF intended to be bound by its terms. Moreover, the Settlement Agreement was signed by FVF—a corporation—personally through Mr. Avila. It is also undisputed that FVF breached the Settlement Agreement by not making any of the installments and by not tendering the full settlement amount by July 13, 2021. Kane Decl. ¶ 12. Therefore, the Court finds that Plaintiff is entitled to the entry of judgment against FVF pursuant to the terms of the Settlement Agreement under California Code of Civil Procedure § 664.6.

The Settlement Agreement provides that FVF will be jointly and severally liable for the Settlement Amount, which is $40,000.[6] SA ¶¶ 1–2. Therefore, the Court finds

---

[6] Plaintiff appears to request judgment in the principal amount of $42,500. *See* Doc. No. 62-1 at 13. This seems to be a reference to the proposed Stipulated Judgment. *See* Doc. No. 62-3 at 16. However, it is undisputed that the Stipulated Judgment was never executed.

that FVF is subject to judgment in the principal amount of $40,000 under the Settlement Agreement and **GRANTS** Plaintiff's motion in that respect.

The Settlement Agreement also provides that the prevailing party "shall recover his or her reasonable attorneys' fees and costs" "in the event that any litigation arises between the parties regarding the enforcement or interpretation of this Agreement." SA ¶ 17. The Court finds that Mr. Kane's efforts, outlined below, are covered under Paragraph 17 as litigation arising from the enforcement of the Settlement Agreement. Accordingly, Plaintiff is entitled to attorney's fees under the Settlement Agreement and California law. *See* Cal. Civ. Code § 1717.

Plaintiff requests attorneys' fees in the amount of $5,692.50. Doc. No. 62-1 at 13. According to Plaintiff, it incurred $1,260 in fees related to the Settlement Disposition Conferences with Judge Montenegro, $945 drafting the stipulated judgment and pursuing its execution, $2,812.50 preparing the present motion, and an anticipated $675 to prepare a reply. Kane Decl. ¶¶ 21–24. In total, Plaintiff's attorney Mr. Patrick J. Kane anticipated spending a total 25.3 hours seeking to enforce the Settlement Agreement and proceeding to judgment, at an hourly rate of $225. Kane Decl. ¶ 25.

No oppositions or replies were filed and therefore the Court subtracts the anticipated $675 from the amount of fees sought. As to the remaining 22.3 hours and $5,017.50 in fees, the Court finds that both Mr. Kane's hourly rate and hours expended are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (explaining the lodestar method). Accordingly, the Court **GRANTS** Plaintiff's request for attorneys' fees and awards $5,017.50 to Plaintiff.

**B.     Judgment Against Mr. Avila**

Plaintiff's motion seeks the entry of judgment against "the FVF Defendants"—FVF and Mr. Avila. Doc. No. 62-1 at 1. However, Mr. Avila is deceased and no longer a party to this action. Despite the fact that Mr. Avila passed away prior to filing its motion, Plaintiff does not address the Court's authority to enter judgment against him. Nor has

Plaintiff amended its motion, or withdrawn the request and refiled, since Ms. Barraza's substitution.

The Court cannot enter judgment against a decedent. *See, e.g.*, *Johnson v. Simonelli*, 282 Cal. Rptr. 205, 206 n.1 (Ct. App. 1991), *overruled on other grounds by ITT Small Bus. Fin. Corp. v. Niles*, 36 Cal. Rptr. 2d 552, 556, (1994). Such a judgment is either void or voidable. *See Grappo v. McMills*, 240 Cal. Rptr. 3d 164 (Ct. App. 2017). This appears to be common sense. *See LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 946 n.1 (9th Cir. 2020) (describing decedents as "judgment-proof defendants"). And certainly, it is at least one reason behind Rule 25(a). *See Gilmore v. Lockard*, 936 F.3d 857, 866 (9th Cir. 2019) (stating that the purpose of Rule 25(a) is "to preserve parties' rights and causes of action when a party dies"). Moreover, due to the Rule 25(a) substitution, Mr. Avila is no longer a party to the action and thus the Court cannot enter judgment against him. *See La Jolla Spa MD, Inc. v. Avidas Pharm., LLC*, No. 17-cv-1124-MMA (WVG), 2019 U.S. Dist. LEXIS 228606, at *1 n.1 (S.D. Cal. Mar. 9, 2019) (declining to enter judgment against an attorney who "is not a party before the Court"); *see also Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1092 (S.D. Cal. 2004) (explaining in the context of a request for injunction that the court cannot issue an order against a non-party). Accordingly, the Court **DENIES** Plaintiff's motion to enter judgment against Mr. Avila.

C.   **Judgment Against Ms. Barraza**

Plaintiff does not expressly ask the Court to enter judgment against Ms. Barraza, as she was not a party to this litigation when the motion was filed. Nonetheless, Plaintiff presumably sought her substitution to obtain judgment against her in lieu of Mr. Avila and, at the Court's direction, Plaintiff served her with its motion. Doc. No. 82.

In its motion and supporting papers, Plaintiff repeatedly states that if proof of death is provided or proper suggestion of death is filed with the Court, "it is willing to discuss withdrawing and/or amending the instant Motion after Avila's successor-in-interest is identified." Doc. No. 62-1 at 9. The Court agrees that none of Mr. Lenderman's filings

with the Court likely amounted to a proper suggestion of death under Rule 25(a). *See* Doc. No. 78 at 4. However, Plaintiff has identified Ms. Barraza as Mr. Avila's successor-in-interest. *See* Doc. No. 75 at 10 (arguing "[h]ere, it is clear that Barraza is the successor-in-interest to Avila, the likely legal representative of his estate, and is furthermore personally liable for the debts of Avila"). It was on this basis that Plaintiff successfully substituted her into this action. *See* Doc. No. 78. Nonetheless, Plaintiff has neither withdrawn nor amended the motion as promised and therefore the issue of Rule 25(a)'s effect on the enforcement of a settlement agreement under section 664.6 has not been briefed.

There is no question that upon substitution, Ms. Barraza stepped into Mr. Avila's shoes. *See Hilao v. Est. of Marcos*, 103 F.3d 762, 766 (9th Cir. 1996). However, Plaintiff has not provided, nor can the Court find any, authority for the proposition that substitution under Rule 25(a) binds a non-signatory to a previously executed settlement agreement.

The Court looks to the history and language of section 664.6 for guidance. A review of section 664.6 reveals that Plaintiff's request for judgment against Ms. Barraza fails for two reasons: first, the signature requirement, Cal. Civ. Proc. Code § 664.6(a) ("in a writing *signed by the parties*"); and second, that the entry of judgment is discretionary, *id.* ("the court, upon motion, *may* enter judgment").

Prior to section 664.6's enactment, a party seeking to enforce a settlement agreement had to file a new action alleging breach of contract and seeking either contract damages or specific performance of the settlement terms, or alternatively had to supplement the pleadings in a pending case. *Weddington Prods., Inc. v. Flick*, 71 Cal. Rptr. 2d 265, 275–76 (Ct. App. 1998). Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit. *Id.* To be enforceable pursuant to the summary procedures of section 664.6, a settlement agreement must either be entered into orally before a court or must be in writing and must signed by the parties. *Id.* at 276. "The reason for the party-signature

requirement is that settlement is such a serious step that it requires the client's knowledge and express consent." *Id.* (internal quotation marks and citations omitted).

The California courts that have considered the signature requirement, prior to the amendment mentioned in footnote 5, have unanimously held that only parties who personally sign a settlement agreement may be subject to enforcement and judgment under section 664.6. *See Levy v. Superior Court*, 41 Cal. Rptr. 2d 878 (1995); *Weddington Prods.*, 71 Cal. Rptr. 2d at 276 (holding that no settlement can be enforced against a party pursuant to section 664.6 unless it can be found that the party "expressly consented in writing to the material terms of that settlement"). However, none of the cases interpreting or applying section 664.6 considered whether a substituted party may be bound by their predecessor's signature.

The Court finds the case of *Cortez v. Kenneally*, 51 Cal. Rptr. 2d 671 (Ct. App. 1996), instructive. In *Cortez*, the Court of Appeal reversed the trial court's enforcement of a settlement agreement pursuant to section 664.6 against a non-signatory. *Id.* at 675. *Cortez* involved a medical malpractice action that was initiated against a doctor, his professional corporation, and two other companies. *Id.* at 672. "At some point" the doctor's wife was added as a defendant; in addition to being the wife of the doctor, she was also the Chief Operating Officer of one of the defendant companies. *Id.* Ultimately, the Court of Appeal found that enforcement of the settlement agreement against her was not authorized under section 664.6 because she had no role in the settlement discussions, was not present at the hearing, did not learn of it until after its execution, and never signed the agreement. *Id.* at 673. Of note is that the wife was represented by the same attorney as her husband and the other defendants. *Id.* Nonetheless, the Court of Appeal held that section 664.6 could not be used as a vehicle to bind the wife to an agreement she did not sign. *Id.* at 675. A similar conclusion was reached in *Williams v. Saunders*, 64 Cal. Rptr. 2d 571 (Ct. App. 1997), wherein the Court of Appeal, citing *Levy*, found that the signature of a spouse and codefendant is insufficient to demonstrate assent to settlement terms for purposes of section 664.6. *Williams*, 64 Cal. Rptr. 2d at 574.

Similar to the wives in *Cortez* and *Williams*, Ms. Barraza was not a party to the action during the settlement efforts, was not present at the ENEs or Settlement Disposition Conferences, did not participate in settlement talks, and never signed the Settlement Agreement. Although she is now a defendant in Mr. Avila's stead and as such may defend herself in this action, she cannot be bound to a contract she did not sign.

Moreover, both *Cortez* and *Williams* involved spouses who, in addition to potentially having independent liability, may have been exposed to their spouse's debts under the settlements after death. Neither of these facts apparently impacted the Court of Appeal's analysis. Similarly, Ms. Barraza's substitution and the fact that she may be liable for Mr. Avila's debts, including under the Settlement Agreement, does not change the Court's analysis of the writing requirement.

Further, the basic California contract law principle that a contract (other than one for personal services) survives death supports this conclusion. *Walgren v. Dolan*, 276 Cal. Rptr. 554, 559 (Ct. App. 1990). Mr. Avila, although now deceased, is still jointly and severally liable under the Settlement Agreement and Plaintiff may pursue alternate avenues to recover from his estate or those liable on his debts. As many California courts have indicated, Plaintiff is not without recourse because section 664.6's statutory procedure is not exclusive; it is merely an expeditious alternative. *See Nicholson v. Barab*, 285 Cal. Rptr. 441 (Ct. App. 1991).

In sum, section 664.6 is a summary procedure available to enforce settlement agreements when certain prerequisites are satisfied. *See Robertson v. Chen*, 52 Cal. Rptr. 2d 264 (Ct. App. 1996). One of those prerequisites is that the party against whom it is to be enforced personally signed the agreement. *See Elyaoudayan v. Hoffman*, 129 Cal. Rptr. 2d 41, 48 (Ct. App. 2003) (explaining that section 664.6's requirement of a "writing signed by the parties" must be read to apply to all parties bringing the section 664.6 motion and against whom the motion is directed). It is undisputed that Ms. Barraza did not sign the Settlement Agreement. Ms. Barraza's status as Mr. Avila's wife and as his successor-in-interest does not abrogate or otherwise satisfy section 664.6's signature

requirement. *See Wackeen v. Malis*, 118 Cal. Rptr. 2d 502, 505 (Ct. App. 2002) (holding that for a written settlement to be enforceable under section 664.6, "it must be made by the parties, not by their attorneys, spouses or other such agents"). Nor does the fact that after the Settlement Agreement's execution she was found to be a proper party for substitution under Rule 25(a). For this reason, the Court finds that the entry of judgment against Ms. Barraza is not appropriate.

Moreover, section 664.6 is discretionary. Thus, to the extent the Court is permitted to enter judgment against Ms. Barraza, it declines to do so. If the purpose of Rule 25(a) is to preserve a plaintiff's rights and claims after a party dies, *see Gilmore*, 936 F.3d at 866, then it follows that Rule 25(a) substitution, as it pertains to a defendant, is a mechanism to ensure that a party who may be ultimately liable as a succeeding debtor to those rights and claims has an opportunity to defend himself. Here, Ms. Barraza has had no opportunity to defend herself against the litigation—while she may have had an opportunity to oppose the present motion, the case ended in principle prior to her substitution. Moreover, section 664.6 is a "summary procedure" and there is simply nothing summary about Plaintiff's request as it pertains to Ms. Barraza. The Court understands that Plaintiff does not intend to "take advantage of the current unfortunate situation." Doc. No. 62-1 at 9. Nonetheless, the complicated facts of this case do not call for the invocation of the summary procedure of section 664.6; the Court will not, on balance, exercise its discretion and allow Rule 25(a) in conjunction with section 664.6 to be used as a collection vehicle against widows. Accordingly, the Court **DENIES** Plaintiff's motion on this basis.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion. The Court **GRANTS IN PART** Plaintiff's motion as it pertains to Defendant FVF as well as Plaintiff's request for attorney's fees. The Court **DENIES** the remainder of Plaintiff's motion.

The Court **DIRECTS** the Clerk of Court to enter judgment against FVF in the amount of $45,017.50 pursuant to the Settlement Agreement and this Order and close this case.

**IT IS SO ORDERED**.

Dated:  May 3, 2022

*[signature]*

HON. MICHAEL M. ANELLO
United States District Judge